IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TONYA L. CURTIS,              )
                              )
            Plaintiff,        )
                              )
      v.                      )   Civil Action No. 14-54-E
                              )
CAROLYN W. COLVIN, ACTING     )
COMMISSIONER OF SOCIAL SECURITY, )
                              )
            Defendant.        )

O R D E R

AND NOW, this 31st day of March, 2015, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on August 8, 2014,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on June 30, 2014,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further

1

evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I. **Background**

On January 21, 2011, Plaintiff Tonya L. Curtis filed a claim for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. Specifically, Plaintiff claimed that she became disabled on August 30, 2002, due to severe depression, a learning disability, bipolar disorder, and hernia surgery. (R. 22, 172, 182). After being denied benefits initially on March 9, 2011, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on July 11, 2012. (R. 97-101, 110-11, 42-75). In a decision dated August 10, 2012, the ALJ denied Plaintiff's request for benefits. (R. 22-38). The Appeals Council declined to review the ALJ's decision on February 1, 2014. (R. 1-3). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239

F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial

3

gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for

4

disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment.  See 20 C.F.R. § 416.920(d).  If a claimant meets a listing, a finding of disability is automatically directed.  If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 416.920(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  See 20 C.F.R. § 416.920(g).  In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience.  See id.  The ALJ must further analyze the cumulative effect of all the claimant's impairments in

determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

**III. The ALJ's Decision**

In the present case, the ALJ applied the sequential evaluation process in reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since January 21, 2011, her application date. (R. 24). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically, major depressive disorder, psychosis, borderline intellectual functioning, mood disorder, borderline personality disorder, dysthymic disorder, and status-post hernia repair. (R. 24). He found, however, that Plaintiff's alleged adjustment disorder with mixed anxiety and depressed mood, posttraumatic stress disorder, bipolar disorder, and bilateral hearing impairment did not constitute medically determinable impairments. (R. 24-25). After addressing whether Plaintiff's impairments met or medically equaled the criteria of several listings, including Listing 12.05, the ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 25-28).

The ALJ next found that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), except

6

that she must avoid all exposure to unprotected heights, dangerous machinery, and like workplace hazards; is limited to understanding, remembering, and carrying out simple instructions and performing simple, routine tasks; is limited to only occasional and superficial interaction with co-workers and the public with no transactional interaction such as sales or negotiation; and is limited to a low stress work environment, which means no production rate pace work, but rather, goal-oriented work with only occasional and routine change in work setting. (R. 28-36). At Step Four, the ALJ found that Plaintiff had no past employment, so he moved on to Step Five. (R. 36). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as dry cleaner helper, janitor, and dishwasher. (R. 37, 67-68). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 37-38).

**IV. <u>Legal Analysis</u>**

Plaintiff argues that the ALJ erred in several ways in finding that she was not disabled, including that he failed to analyze her intellectual impairments properly under Listing

7

12.05C, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis. She further contends that the record establishes that her condition does, in fact, meet that listing, rendering her disabled under the Act. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, the Court finds that the ALJ failed to provide sufficient analysis regarding whether Plaintiff's impairments meet or equal the criteria of Listing 12.05C. The Court leaves for the ALJ, however, to determine — after providing further analysis of Plaintiff's alleged deficits in adaptive functioning — whether Plaintiff's condition ultimately meets that listing. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision, and it will remand the case for further consideration.

Listing 12.05 provides, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The required level of severity can be met when the requirements of Listing 12.05C are satisfied, i.e., "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related

limitation of function." In his decision, the ALJ found that Plaintiff did not meet the requirements of Listing 12.05C because, according to his analysis, she did not possess the required deficits in adaptive functioning. In so finding, he stated that he reviewed Plaintiff's "reports regarding her independent functionality." (R. 27). He then discussed a number of facts from the record, including Plaintiff's allegations of special assistance in school and lack of corresponding school records, her graduation from high school, her completion of the function report in this matter on her own, and various facts regarding her living situation, daily activities, and care of her daughter and pets. He also noted that Dr. Byron Hillin, Ph.D., who performed IQ testing on Plaintiff, assessed Plaintiff a Global Assessment of Functioning ("GAF") score of 60. (R. 27-28). He further questioned the validity of the results of the tests administered by Dr. Hillin based on Dr. Hillin's comments that Plaintiff's effort at testing had been "only fair" and that she "tended to give up easily." (R. 28).

Plaintiff, in her brief, questions the standard that the ALJ employed in making these findings, and argues that the ALJ improperly required that she show "significant" deficits in adaptive functioning, rather than just deficits, in determining whether she met the listing. She further argues that he

9

improperly equated being a parent and having the ability to do limited chores with a lack of deficits in adaptive functioning. She therefore asserts that his Step Three Analysis is not supported by substantial evidence.

Although not challenged by Plaintiff, the Court should note at the outset that it agrees with the many courts that have found that a finding of the appropriate deficits in adaptive functioning is a requirement of Listing 12.05C. See, e.g., Cortes v. Comm'r of Soc. Sec., 255 Fed. Appx. 646, 651 (3d Cir. 2007) (noting that under Section 12.05, the Commissioner's regulations require that a claimant prove "'subaverage general intellectual functioning with deficits in adaptive functioning' manifesting before age 22"); Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003) ("As is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); Harper v. Colvin, No. 13-446, 2014 WL 1278094, at *7 (W.D. Pa. Mar. 27, 2014) (agreeing with the ALJ's interpretation of Listing 12.05C as requiring the necessary deficits in adaptive functioning, which is consistent with the Commissioner's own view and with the "view endorsed by an overwhelming majority of courts in this Circuit, including the Court of Appeals").

As noted, though, this is not the real issue here, as Plaintiff does not deny her need to establish deficits in adaptive functioning. She does, however, challenge the standard employed by the ALJ in making his finding that she lacked these requisite deficits, albeit somewhat indirectly. The problem the Court faces in reviewing the ALJ's decision on this ground is that the law does not specify one specific test to be used to determine whether a claimant has the necessary deficits in adaptive functioning under this listing. See Harper, 2014 WL 1278094, at **7-8; Thomas v. Colvin, No. 13-267, 2014 WL 584048, at **9-10 (W.D. Pa. Feb. 14, 2014); Logan v. Astrue, No. 07-1472, 2008 WL 4279820, at **8-10 (W.D. Pa. Sept. 16, 2008). In fact, the Social Security Administration, in commentary issued in 2002 along with rules revising the listings, explained that the definition of the term was purposefully left open-ended. See Technical Revisions to Medical Criteria for Determination of Disability, 67 Fed. Reg. 20018-01 (Apr. 24, 2002); Harper, 2014 WL 1278094, at *7. The SSA recognized that each of the four leading professional mental health organizations defines intellectual disability and adaptive functioning in a slightly different way, and, rather than endorsing the methodology of any one of these organizations over another, instead stated that it allows the use of any measurement method "recognized and

11

endorsed by the professional organizations."[1]  67 Fed. Reg. 20018-01.

Accordingly, the SSA has expressly declined to explain what its regulations mean in regard to deficits in adaptive functioning.  Further, the SSA's commentary has led courts to disagree as to whether the ALJ is, in fact, specifically required to cite which of the four tests he or she used in evaluating a claimant's alleged deficits in adaptive

---

[1] For example, the American Psychiatric Association most recently stated that deficits in adaptive functioning "refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background." Diagnostic and Statistical Manual of Mental Disorders (DSM-V) 37 (5th ed., American Psychiatric Ass'n 2013).  Such deficits "limit functioning in one or more activities of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." Id. at 33.  Further, adaptive functioning involves reasoning in three domains:  "The *conceptual (academic) domain* involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others.  The *social domain* involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others.  The *practical domain* involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others." Id. at 37.  This criterion is met when at least one of these three domains of adaptive functioning is sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school, at work, at home, or in the community. See id. at 38.
    The standard for intellectual disability set forth by the American Association of Mental Retardation (now the American Association on Intellectual and Developmental Disabilities) includes "significant limitations in intellectual functioning and in adaptive behavior as expressed in conceptual (*i.e.,* receptive and expressive language, reading and writing, money concepts, and self-direction); social (*i.e.,* interpersonal, responsibility, self-esteem, gullibility, naiveté, follows rules, obeys laws, and avoids victimization); and practical adaptive skills (*i.e.,* personal activities of daily living such as eating, dressing, mobility and toileting; instrumental activities of daily living such as preparing meals, taking medication, using the telephone, managing money, using transportation, and doing housekeeping activities; maintaining a safe environment, and occupational skills)." Logan v. Astrue, 2008 WL 4279820, at *8 n.4 (citing Manual of Diagnosis and Professional Practice in Mental Retardation (American Ass'n on Mental Retardation, 1993)).

functioning.  Compare Harper, 2014 WL 1278094, at *8 (declining to require an ALJ to articulate one specific standard where he "sufficiently explained the benchmark he used to arrive at his conclusion"), with Shaw v. Astrue, No. 11-139J, 2012 WL 4372521, at *6 n.8 (W.D. Pa. Sept. 24, 2012) (finding that the ALJ's failure to identify and apply one of the four standards of measurement used by one of the professional organizations would require remand (citations omitted)) and Thomas, 2014 WL 1584048, at *11 (finding that SSA regulations require the ALJ to articulate which standard or guideline he or she utilizes from one of the four major professional organizations in determining whether a claimant has deficits in adaptive functioning).

In any event, regardless of whether the ALJ was required to articulate a particular standard from one of the four major professional organizations in making his assessment, the Court finds that he failed to sufficiently identify a specific standard or list of factors that he considered in determining that Plaintiff did not have deficits in adaptive functioning severe enough to meet Listing 12.05C.  The closest the ALJ came to articulating a standard was in stating that he "reviewed [Plaintiff's] reports regarding her independent functionality." (R. 27).  However, this amounted to little more than exchanging the word "adaptive" with "independent," and is simply insufficient to establish what the ALJ considered to be the

13

criteria for determining whether Plaintiff suffered from the requisite deficits in adaptive functioning. Likewise, although, as noted, the ALJ discussed several factors in his analysis, he did not explain the particular significance of those factors, nor did he specifically explain why the ability to perform these activities demonstrated a lack of deficits in adaptive functioning. Further, the ALJ did not address Plaintiff's abilities in regard to these activities in relation to the common person or in relation to community standards, despite Plaintiff's claims that she needs assistance to perform most or all of these activities.

The Court is sympathetic to the current situation in which ALJs find themselves when attempting to analyze Listing 12.05. The SSA, rather than defining the concept of "deficits in adaptive functioning" for purposes of this analysis, has instead chosen specifically to refrain from defining the term or providing a specific standard for determining whether such deficits exist. In place of the guidance that a uniform definition and standard would provide to ALJs, the SSA chose to endorse a procedure whereby each ALJ must pick and choose among several different standards, apparently acknowledging that the standards will not be quite the same for every applicant. Given the SSA's own position that ALJs are to choose and define the standard under which to analyze a claimant's adaptive

14

functioning, the Court will remand here for the ALJ to more fully articulate the standard he is using in making this finding. Again, the Court is not necessarily holding that he must choose the criteria of one of the four leading professional mental health organizations, but rather that he must at least set forth a standard clear enough for judicial review.

Accordingly, the ALJ's analysis of the requirements of Listing 12.05C is insufficient to fairly ascertain whether the evidence could have shown that Plaintiff's intellectual impairments meet that listing.[2] While the record may ultimately provide a basis for finding that Plaintiff's intellectual disability does not meet the listing in question, there is enough evidence from the record to necessitate a more focused analysis as to the application of Listing 12.05C. To the extent, though, that Plaintiff asks this Court to find, at this point, that she plainly meets Listing 12.05C, and that the ALJ's decision should be reversed and that she should be awarded benefits, the Court cannot find that substantial evidence in the record as a whole indicates that Plaintiff has met the listing, or that she is disabled and entitled to benefits. See

---

2   The Court notes that, although the ALJ questioned the validity of the results of the tests administered by Dr. Hillin and stated that the scores were suspect, based on Dr. Hillin's comments that Plaintiff's effort at testing had been "only fair" and that she "tended to give up easily," he did not explicitly reject the scores. To the contrary, he acknowledged that Plaintiff's full scale IQ score of 69 and verbal IQ score of 70 satisfy the 12.05C IQ score requirement. (R. 28). Since the ALJ did not base his finding in regard to Listing 12.05C on this ground, the Court makes no finding as to the validity of the tests.

Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984). Since the record is, at best, ambiguous as to whether Plaintiff can establish that she meets the requirements of Listing 12.05C and, in particular, whether she has the required deficits in adaptive functioning, the Court leaves the initial analysis of this issue to the ALJ. See Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (noting that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943))). Indeed, the Court expresses no opinion as to whether the ALJ's ultimate determination regarding Plaintiff's impairments could be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

Because the Court is remanding the case on this ground, it does not reach the other issues raised by Plaintiff, which relate primarily to the weight afforded by the ALJ to various pieces of evidence in the record. On remand, the ALJ should consider Plaintiff's concerns in weighing the evidence. The Court does, however, emphasize that, Plaintiff's concerns notwithstanding, the ALJ is required to consider the GAF scores assessed by the various health care providers in making his findings. The fact that GAF scores have been abandoned in the DSM-V does not change this, as they remain part of the medical record in this case.

As the Third Circuit Court of Appeals has explained, GAF scores "are used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults." Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n.1 (3d Cir. 2007). The GAF score system does raise some problems when used in the social security context because the scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746-01 (Aug. 21, 2000). Therefore, while a GAF score can assist an ALJ in understanding the limitations contained in the opinions of medical professionals, the actual number itself often does little to describe the specific functional limitations caused by the claimant's impairments. See Howard, 276 F.3d at 241 ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Nonetheless, a GAF score is evidence that an ALJ should consider in determining a claimant's impairments and limitations in setting forth the claimant's RFC and in fashioning a hypothetical question to the VE. See Wiggers v. Astrue, 2010 WL 1904015, at *8 (W.D. Pa. May 10,

2010) (quoting Watson v. Astrue, 2009 WL 678717, at *5 (E.D. Pa. Mar. 13, 2009)).

The ALJ at no point in the decision at issue found that any of Plaintiff's GAF scores definitively established the ability or inability on her part to perform any activities. Rather, he considered them as part of a longitudinal review of the medical record as a whole, as he was required to do. Indeed, he discussed at great length how he relied on the scores in formulating Plaintiff's RFC and the hypothetical to the VE. (R. 34). Therefore, while, on remand, the ALJ should ensure that the scores not be given any undue weight, that does not appear to be what has happened here.

## V. Conclusion

In short, the record simply does not permit the Court to determine whether substantial evidence exists to support the ALJ's determination at Step Three that Plaintiff does not meet a listing, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch  
United States District Judge

ecf:    Counsel of record